Jaroslaw KUNYCIA, Plaintiff,

v.

MELVILLE REALTY COMPANY, INC., Defendant.

No. 87 Civ. 1117 (VLB).

United States District Court, S.D. New York.

July 16, 1990.

---

Robert A. Banner, LePatner, Block, Pawa & Rivelis, New York City, for plaintiff.

Joseph D. Garon, Brumberg, Graves, Donohue & Raymond, New York City, for defendant.

**568**

VINCENT L. BRODERICK, District Judge.

This case was tried to the court. This memorandum order constitutes my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a) solely on the issue of liability.

Plaintiff has asserted a claim of federal copyright infringement and a state law claim of unjust enrichment. Defendant has denied the allegations and has asserted defenses based on laches, the applicable statute of limitations, and preemption of the state law claim.

## I.

Plaintiff Jaroslaw Kunycia is a licensed architect. Between January 1972 and June 1979, plaintiff was employed as a designer and draftperson at Stuart Roberts & Associates ["SRA"], an industrial design firm owned by Stuart Roberts. One of SRA's clients during this period was Kay–Bee Toy and Hobby stores ["Kay–Bee"] of which Howard Kaufman was president.

Between 1970 and 1972, Kaufman decided to develop a uniform design for his Kay–Bee stores in conjunction with his decision to open up numerous stores in shopping malls. He employed a number of architects in developing this design. Kaufman was unhappy, however, with the drawings produced by these architects: he found the drawings they produced difficult to read. He therefore engaged SRA to develop the design for his stores. SRA assigned plaintiff to the project.

During the SRA–Kay–Bee association, Kaufman remembers working only with plaintiff. In 1977, plaintiff began work on his first Kay–Bee project: a store in the Stroud Mall in Stroud, Pennsylvania. No drawings from the previous architects were available, and the design he ultimately produced was completely new with a new storefront, display area, colors, display systems, and arrangements.

SRA continued its design work for Kay–Bee during the years 1977 into 1979. Plaintiff headed up the work, serving as "project-manager." In this position his work included the preparation of drawings for successive Kay–Bee stores throughout the country. These drawings differed from one another based upon information obtained from landlords. During his time at SRA plaintiff prepared the preliminary and working drawings for more than seventy additional stores. Kaufman reviewed preliminary drawings which were submitted, but did not draw or design himself.

For this work SRA billed Kay–Bee a set fee for each store, with the charges broken down by the phases of each project: field trips; preliminary drawings; working drawings; consulting engineers; etc. The originals of all drawings were kept at SRA, and copies were given to Kaufman, landlords, general contractors and other concerned parties. Neither SRA, Kunycia, nor Kaufman discussed the ownership of these drawings. In SRA's agreement with Kay–Bee there were no ownership or copyright provisions.[1]

On June 1, 1979, Kunycia gave notice that he was going to leave SRA. In mid-June Roberts met with Kaufman and explained that Kunycia would be leaving and that Robert Padilla, another designer at SRA, would be in charge of the Kay–Bee account. Kunycia left SRA at the end of June to start his own business.

In early July 1979, Kaufman contacted plaintiff about continuing to work for Kay–Bee. Plaintiff submitted a proposal which Kaufman signed. Plaintiff was initially paid a retainer of $12,000 by Kaufman, which was applied against fees for ensuing stores. Plaintiff then began to handle all of Kay–Bee's work and prepared a new set of drawings for Kay–Bee. At the time the drawings were made, he did not have any

---

1. SRA is an industrial design firm. Stuart Roberts testified that it was his understanding that if Kay–Bee paid its bill, Kay–Bee would own the drawings. He acknowledged that his understanding of the design industry's custom is contrary to the custom among architects. Kaufman testified that although ownership was never discussed, he believed that he owned the design as well as the drawings. Plaintiff testified that he understood that the drawings belonged to the architect.

prior Kay–Bee drawings prepared by SRA or its predecessors. Plaintiff prepared the drawings from scratch with new formats, notes and details. In the fall of 1979 Kaufman supplied plaintiff with certain of SRA's drawings for Kay–Bee, which plaintiff used as a reference only after he prepared his own sets of drawings.[2] At no time was ownership of these drawings discussed by the two parties. Kunycia understood that, as an architect, he owned them. Kaufman believed that Kay–Bee owned the drawings.

From July, 1979 to the spring of 1983, plaintiff prepared drawings for approximately 200 additional Kay–Bee stores. Plaintiff "stamped" all of these drawings, certifying them as an architect. None of these drawings included a copyright notice.

In August, 1981 the Melville Corporation acquired Kay–Bee. Melville Corp. is involved in specialty retailing and operates such store chains as Thom McAnn shoes, CVS drugs, Marshall's clothing, and others. Defendant Melville Realty is a wholly-owned subsidiary of Melville Corp. and is responsible for certain of the leasing and construction activities of Melville Corp. After the acquisition plaintiff continued to deal with Kaufman in the same way as he had previously. However, at some point after Kay–Bee was acquired, defendant's drafting department began to prepare its own construction drawings for Kay–Bee.

Beginning in the latter part of 1981, Melville Realty's in-house drafting department reproduced drawings previously prepared by plaintiff in connection with the construction of new Kay–Bee retail facilities. Initially Melville used a "cut and paste" method of reproduction. In March, 1982 Nicholas J. Tricarico, who headed defendant's drafting work for Kay–Bee, told Leonard Atkins, a drafting supervisor at Melville, to redraw plaintiff's drawings.

Atkins was instructed to produce new drawing formats for Kay–Bee. Thereafter, under his supervision some of plaintiff's drawings were redrawn exactly, cut and paste versions of plaintiff's drawings were used to prepare new drawings, and new paper and title blocks were employed.[3]

In October, 1983 plaintiff first suspected that Melville was copying his Kay–Bee format without his permission. In April, 1984 he saw sheets prepared by defendant for a Kay–Bee store in Leominster, Massachusetts [the "Searstown store"] which were in significant part exactly like his own. It was his impression that his drawings and lettering were photocopied and not redrawn.[4] After seeing defendant's drawings for the Searstown store, plaintiff spoke to Tricarico about the copying. Tricarico stated that he would make changes in the drawings, but plaintiff was never subsequently advised of any changes. In the late summer of 1984, plaintiff engaged in a series of written communications with Tricarico which concerned defendant's copying of plaintiff's drawings and steps taken by defendant to remedy the problem. Plaintiff believes that defendant has developed construction drawings based on plaintiff's plans for approximately 400 additional Kay–Bee stores.

On May 6, 1986, plaintiff's drawings for the Honey Creek Mall in Terre Haute, Indiana were registered with the Copyright Office.[5] The drawings which have been

---

**2.** In a stipulation signed by Roberts and Kunycia in a separate action, Roberts has disclaimed ownership in any designs worked on by Kunycia while he was at SRA.

**3.** In his deposition Tricarico testified that from 1981 to 1986 he had no personal involvement in the redrawing of plaintiff's drawings and only supervised the work.

**4.** Defendant has not produced the testimony of any person involved in the actual reproduction of plaintiff's drawings. Neither Tricarico nor Atkins have any personal knowledge of what

procedures were actually used when the plans were redrawn.

**5.** Registration of these drawings is a prerequisite to the institution of this action. 17 U.S.C. § 411. This action may brought for infringements which occurred prior to as well as after May 6, 1986, the date of registration. *See, Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27 (2d Cir.1982); *Demetriades v. Kaufmann,* 680 F.Supp. 658, 662 (S.D.N.Y.1988). However, plaintiff may recover statutory damages and attorney fees only as to infringement which occurred *after* May 6, 1986. 17 U.S.C. § 412(1).

registered are typical and representative of the drawings he made for Kay–Bee during the period, 1979–1983.

## II.

Proof of copyright infringement requires a showing of ownership of a valid copyright by the plaintiff and copying by the defendant. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985); *Past Pluto Productions Corp. v. Dana*, 627 F.Supp. 1435, 1440 (S.D.N.Y. 1986).

For a copyright to be valid the subject matter must be copyrightable and the work must be sufficiently original.[6] Plaintiff's certificate of copyright registration for the Honey Creek drawings is prima facie evidence that the copyright is valid under § 410(c) of the Copyright Act. This presumption of validity is not irrebuttable, *see Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980), but the burden of proving an invalid copyright shifts to the defendant. *Hasbro Bradley*, 780 F.2d at 192.

An author may not obtain copyright protection for his ideas or the facts he narrates. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556, 105 S.Ct. 2218, 2228, 85 L.Ed.2d 588 (1985). However, the specific means chosen by an author to express certain ideas or facts may be copyrighted, as opposed to the idea itself. *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). The initial issue presented by this action is whether plaintiff's Honey Creek drawings involve an expression which is independent of the underlying design of the Kay–Bee store itself and which therefore may be protected under the Copyright Act.

## III.

1. *Copyrightability of the Subject Matter*

■ Plaintiff asserts that the "format" of his drawings is protected by his copy-

right; he does not claim copyright protection for the "design" of the Kay–Bee stores. For purposes of this case, "format" is the method of expressing the basic "design" of the Kay–Bee store. "Format" would include the layout of the store, the arrangement of detailed drawings on a sheet, the style and perspective of the drawings, the language of the notes, and the method of presenting the notes—all the factors that can vary when two individuals set out to portray the same product on paper. "Design" is the arrangement of the physical elements of the Kay–Bee store. While the design expressed by two drawings may be the same, their format may differ.

Defendant contends that the format of the Honey Creek drawings is not copyrightable because the Kay–Bee store design can be expressed in only a limited number of ways; design and the expression of that design are not separable. If plaintiff were allowed to enforce his copyright of the Honey Creek drawings, defendant argues, he would be granted a monopoly on the use of the store design itself. In support, defendant refers to a number of cases in which the subject matter of certain works was held not to be copyrightable because inherent limitations on the ways in which an idea (or design) can be expressed cause those expressions to be similar, when in fact the similarity is imposed by the subject matter treated—i.e., the idea (or design). *See Frybarger v. International Business Machines Corp.*, 812 F.2d 525 (9th Cir. 1987) (certain features of a video game constituted the basic idea of video games and were not copyrightable); *Affiliated Hospital Products, Inc. v. Merdel Game Manufacturing Co.*, 513 F.2d 1183 (2d Cir. 1975) (no copyright infringement where the distinction between substance and arrangement of rules for two simple uncopyrighted games was blurred); *Morrissey v. Procter & Gamble Co.*, 379 F.2d 675 (1st Cir.1967) (rules of uncopyrighted contest capable of only a limited number of forms of expres-

---

**6.** Professor Nimmer cites other elements of ownership such as citizenship status of the author and compliance with applicable statutory formalities. No issue has been raised in this case as to any of these additional elements.

sion); *Hearn v. Meyer*, 664 F.Supp. 832 (S.D.N.Y.1987) (locations of quotes from literary works capable of expression in limited number of ways); *Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F.Supp. 154 (S.D.N.Y.1980), *aff'd*, 657 F.2d 262 (2d Cir.1981) (similarities between instructions for use of two sewing devices were dictated by functional considerations, which permitted expression of instructions in only limited ways).

This case is distinguishable from the cases cited by defendant in that plaintiff has shown that there are various ways in which the same Kay–Bee store design elements can be depicted. Paul Segal, an expert for the plaintiff, testified that the Kay–Bee wall section, for example, could be drawn in "an infinite number of ways" and described possible variations. (Transcript, p. 218 et seq.) Similarly, Martin Dorf, also an expert for the plaintiff, testified that there are "hundreds of ways" to draw the same design, including the Kay–Bee design. (Transcript, pp. 249–50.) Plaintiff also prepared, for example, eight different depictions of the same very simple cube display. (Trial Exhibit 60.) Finally, although defendant's expert, Howard Krasnoff, indicated that he personally would use only one of the alternative methods of depicting the cube display set out by plaintiff in Trial Exhibit 60, he stated repeatedly on cross-examination that, although certain SRA drawings and Kunycia drawings depicted the same elements, they were drawn differently. (Transcript, pp. 430–50).[7] In this case design did not impose such uniformity of format (the expression of the design) that the format may not be protected under the Copyright Act.

**2. *Originality of Plaintiff's Drawings***

■ Defendant also asserts that the plaintiff's drawings lack the originality required under copyright law. "Although novelty, uniqueness and ingenuity are not required, independent creation is. Independent creation, in turn, means that a work must not consist of actual copying." *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 910 (2d Cir.1980) (citations omitted).

First, defendant argues that plaintiff copied the SRA drawings to produce his own drawings for Kay–Bee. I have already found that plaintiff's Honey Creek drawings were created independently of any prior Kay–Bee drawings, whether they were prepared by SRA or some other firm. It is irrelevant that the *designs* depicted in the SRA and Kunycia drawings are very similar since, as noted above, the format of the drawings is at issue here, not the design. Kunycia drafted both his own drawings and the SRA drawings. Beyond the commonality of the underlying store design,[8] I attribute the similarity between the two sets of drawings to the fact that both sets benefitted from plaintiff's own personal talents and standards.[9]

Second, defendant argues that even if plaintiff did not copy the SRA drawings, plaintiff's drawings lacked originality because they are so similar to the SRA drawings. On this argument defendant faces an uphill battle. The Second Circuit has held that "[t]he test of originality is concededly one with a low threshold in that '[a]ll that is needed ... is that the "author" contributed something more than a "merely trivial" variation, something recognizably "his own." ' " *L. Batlin & Son, Inc.*

**7.** Krasnoff and Dorf seem to have disagreed as to whether the differences between the SRA drawings and plaintiff's drawings are a result of plaintiff's skill as architect or his skill as draftperson. (Transcript pp. 250; 443–447.) I find that when an architect places his stamp on a drawing of a prototype adapted as part of a continuing program, he is exercising his professional judgment as an architect, not just as a draftperson.

**8.** *See Durham Industries Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980) (where the protected

work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying).

**9.** *See generally, Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir.1977) (a work may command copyright protection even if it is completely identical with a prior work, provided it was not copied from such prior work but is rather a product of the independent efforts of its author).

*v. Snyder,* 536 F.2d 486, 490 (2d Cir.), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976) (quoting *Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 191 F.2d 99, 103 (2d Cir.1951)).

The format of Kunycia's Honey Creek drawings (Trial Exhibit 4) is significantly different from the format of SRA's drawings for Central Mall, Lawton, Oklahoma (Trial Exhibit 5). The greater clarity and readability of the plaintiff's Honey Creek drawings is apparent to even the lay person. Both Mr. Segal and Mr. Dorf offered professional comparisons of the two sets of drawings, concluding that, although the two sets of drawings would produce essentially the same product, plaintiff's Honey Creek drawings were clearer, more logical and better organized, and showed more completely the relationships between different elements of the store. I accept those conclusions.

The differences between plaintiff's Honey Creek drawings and the earlier SRA drawings are meaningful ones. An ordinary observer would find Kunycia's drawings more legible and more easily understood than those produced by SRA. Mr. Dorf testified as to the importance of these factors in obtaining accurate bids, reasonable prices and completion of the project on schedule. (Transcript, pp. 243–44.) Thus, the contribution of Kunycia to the format of his Kay–Bee drawings can be deemed neither inadvertent nor trivial.[10]

### 3. *Ownership of Valid Copyright*

█ In addition to challenging the copyrightability and originality of plaintiff's work, defendant asserts that defendant, not plaintiff, owns the architectural drawings which plaintiff alleges were copied and that therefore plaintiff's infringement claim fails.

An architect owns his drawings, unless expressly agreed otherwise by the parties. Plaintiff testified that this was his understanding and referred to the American Institute of Architects (AIA) handbook of professional practice. (Transcript, pp. 20, 96–7.) Paul Segal also stated that it is the custom and practice for architects to own their drawings unless they specifically give them up, "which is very unusual." He said that the standard agreement of the AIA [Form B–141] provides for ownership by architects and that this standard agreement is jointly sponsored by the associations of general contractors, realtors and architects. (Transcript, pp. 206–08, 221.) Martin Dorf added that it is customary that the architect also owns drawings of store prototypes, even where a provision on ownership is not contained in the agreement. He stated further that, in the business of designing chain stores, the understanding is that the owner does not have the right to use the architect's drawings for successive stores unless the architect is properly compensated. (Transcript, pp. 241–43.) Even defendant's expert, Howard Krasnoff, agreed that it is the custom and practice of the profession for the architect to own drawings unless there is a prior agreement otherwise. He stated that, in his own practice, the client at times owns the drawings and uses them to develop successive stores. When pressed on cross, however, Mr. Krasnoff conceded that when he has prepared the drawings himself and they contain his own title block and stamp [as with Mr. Kunycia and his drawings] he as architect owns the drawings. (Transcript, pp. 373–74, 425–26).

The ownership of construction drawings was not provided for in the agreement between plaintiff and Kaufman, nor was it the subject of any other agreement between them. It was not even discussed by the two men. Pursuant to their agreement Kaufman compensated Kunycia for services rendered. Although fees were established on a per-store-basis, those fees were based on projections of hours to be billed for certain types of work. There was no agreement to purchase the Kunycia drawings themselves. (See Trial Exhibits 1, 2

---

**10.** Contrast with *Hearn v. Meyer,* 664 F.Supp. 832, 836 (S.D.N.Y.1987) (differences which constituted only unintentional and insignificant variations found unprotectable).

and 3.) [11]

The ownership of the Kay–Bee drawings produced at SRA prior to June 1979 is irrelevant here because plaintiff's Honey Creek drawings are not based on SRA's drawings. Although the same basic *design* is depicted in both sets of drawings, Kunycia claims copyright protection for the *format* of his drawings only—which I have found differs significantly from the SRA format.

Defendant also challenges the ownership of the drawings prepared by plaintiff on the grounds that defendant, through Kay–Bee, owns the Kunycia drawings under 17 U.S.C. § 101 of the Copyright Act of 1976 [12] because Kaufman actively participated in developing the design of the Kay–Bee store upon which Kunycia's drawings were based.

Section 101 of the Copyright Act of 1976 defines a work made for hire as:

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specifically ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101. Because the express agreement required in subsection (2) is lacking, the issue here is whether plaintiff's Kay–Bee drawings were prepared by him as an "employee" acting within the "scope of his employment," pursuant to subsection (1).

Since the bench trial was conducted the Supreme Court decided *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), which discussed the four alternative definitions of § 101(1) propounded by the lower courts. The first approach looked to whether "the hiring party retains the right to control the product"; the second interpretation, adopted by the Second Circuit in *Aldon Accessories Ltd. v. Spiegal, Inc.*, 738 F.2d 548 (2d Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984), inquired as to whether "the hiring party has actually wielded control with respect to the creation of a particular work." The third view looked to the meaning under common law agency rules and the fourth, formalistic, approach simply asked whether the hired party was a "formal, salaried" employee. *See* 109 S.Ct. at 2171–72. After discussing issues of statutory construction and legislative history the Court adopted the third approach and held that a court should inquire "using principles of general common law of agency, whether the work was prepared by an employee or an independent contractor." *Id.* at 2178.

Applying this standard to the facts of its case the Supreme Court outlined factors relevant to an inquiry as to "the hiring party's right to control the manner and means by which the product is accomplished":

Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.... No one of these factors is determinative.

*Id.* (citations omitted).

Applying these factors to the instant case I find that in producing drawings for

---

**11.** It is also clear from the evidence presented that after Melville Corporation acquired Kay–Bee in August 1981, the parties did not enter into any agreement as to the ownership of plaintiff's drawings.

**12.** The Copyright Act of 1976 was effective January 1, 1978.

Kay–Bee plaintiff was not an employee but an independent contractor and therefore the work was not made for hire. In working with plaintiff Kaufman's primary interest was in the design of the Kay–Bee store itself: the features each store would have when completed. This process was essentially complete by the time Kunycia went into business on his own. Although Kaufman did review and approve Kunycia's preliminary drawings for Kay–Bee stores, he himself did not do any drawing or contribute to the preparation or organization of the actual sheets. Just as the sculptor in *Reid*, plaintiff here was a skilled worker. Plaintiff also was free, within whatever deadlines were set for him, to set his own hours and neither defendant nor Kaufman paid any payroll taxes, social security benefits, or employee benefits on behalf of plaintiff. Once he had started his own business as architect, Kunycia acted as an independent contractor, not as an employee. Thus the drawings he produced for Kay–Bee are not works for hire and proper ownership of them lies with plaintiff.

### 4. *Publication of Plaintiff's Drawings*

█ Defendant also argues that plaintiff's registration of the Kay–Bee drawings is not enforceable because the drawings were published and hence are in the public domain and not copyrightable. Defendant points out that dozens of sets of drawings for each of hundreds of stores were distributed to contractors, manufacturers, landlords, and certain public authorities which issue building permits and supervise construction. Because plaintiff did not provide notice of copyright when his work was allegedly "published" pursuant to 17 U.S.C. § 401, and did not take steps to correct the absence of that notice pursuant to 17 U.S.C. § 405(a), Melville asserts that the drawings passed into the public domain.

Defendant's argument requires reference to the definition of "publication" under the Copyright Act. Section 101 reads in relevant part:

'Publication' is the distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental, lease or lending. The offering to distribute copies ... to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.

17 U.S.C. § 101.

Distribution of plaintiff's architectural drawings to contractors, landlords and building authorities does not constitute a publication requiring copyright notice. Plaintiff's drawings were circulated only to entities directly involved in the construction of particular Kay–Bee stores. The distribution was restricted to those persons without whose participation the plans could not be given practical effect. Implicit in these business relationships is the understanding that such a distribution does not convey the right further to diffuse, reproduce, distribute or sell the drawings without the architect's permission. Whether this is termed a "limited publication" or no publication at all, the effect is the same: plaintiff's drawings did not pass into the public domain. *Accord Schuchart & Assoc. v. Solo Serve Corp.*, 220 U.S.P.Q. 170, 179–81 (W.D.Tex.1983).

### 5. *Plaintiff's Application for Copyright Registration*

█ Melville challenges the validity of plaintiff's copyright registration, asserting that plaintiff allegedly withheld information from the Copyright Office which, had it been submitted, would have precluded the issuance of the registration certificate. Melville refers to several allegedly improper omissions, but its chief complaint is that Kunycia did not provide information on preexisting works upon which his drawings were based as requested by Question #6 of the application.

Plaintiff's conduct before the Copyright Office constituted substantial and good faith compliance with the registration requirements. I have found above that plaintiff's format for the Kay–Bee drawings is original, independently created material. It was not demonstrated at trial that Kunycia's drawings were based on SRA drawings or, more importantly, that the material sought to be protected by copyright—the

Kunycia format—was derived from the SRA format. Thus, Question 6 is not directly applicable and plaintiff's failure to answer it is of no consequence. Even if plaintiff's Honey Creek drawings were considered derivative works, however, this would not necessarily invalidate his copyright as provided under 17 U.S.C. § 103. There is no evidence that plaintiff intended to mislead the Copyright Office by not answering Question 6. Such an omission, if innocently made, and which would not have affected the decision of the Copyright Office, will not invalidate plaintiff's copyright registration. *See, e.g., Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir.1984); *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F.Supp. 1329, 1341 (S.D.N.Y.1986).

### IV.

Having found that the format of the Honey Creek drawings is copyrightable, the format is sufficiently original to warrant copyright protection and that the drawings are not works for hire owned by defendant, I conclude that plaintiff holds ownership of a valid copyright in the format of the Honey Creek drawings. Thus, the next issue raised is whether defendant copied plaintiff's drawings.

In the absence of direct proof, copying may be inferred where the plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectable material in the two works. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). Defendant did copy plaintiff's copyrighted drawings. Melville had access to plaintiff's drawings, and Melville's drawings are substantially similar to his own.

■ Where the defendant admits copying the protected work, plaintiff need not prove that defendant had access to the

work and that there is substantial similarity between it and the accused work. *See e.g. Schuchart & Associates v. Solo Serve Corp.*, 220 U.S.P.Q. 170, 177 (W.D.Tex. 1983). Melville has admitted copying Kunycia's drawings themselves, not just the Kay–Bee design. "The early Kay–Bee drawings prepared in-house by Melville Realty were essentially reproductions of the notes and fixture drawings prepared by Kunycia of the Kunycia drawings with changes made by Melville Realty to the plans ... to conform to the specific requirements of each new site." Defendant's Pretrial Memoranda, p. 8. Cut and paste versions of Kunycia drawings were used by Melville to prepare new Kay–Bee drawings.

■ Melville—as owner of Kay–Bee— concedes that it had access to Kunycia's Kay–Bee drawings. This is not disputed.[13] Melville has argued, however, that Kunycia has not shown that Melville had access to, or copied, the Honey Creek drawings specifically.

The Honey Creek drawings, which were properly registered with the Copyright Office, are representative of the Kay–Bee drawings plaintiff prepared after he left Stuart Roberts in 1979. Plaintiff is not required to show that Melville used this particular set of drawings; only that Melville had access to his Kay–Bee drawings generally and that Melville's work is substantially similar to plaintiff's copyrighted Honey Creek drawings. Direct proof of access need not be provided, but may be inferred from the fact that plaintiff prepared the Honey Creek drawings for defendant's use and thus defendant had an opportunity to copy them. *See Arrow Novelty Co. v. Enco Nat'l Corp.*, 393 F.Supp. 157 (S.D.N.Y.1974); *Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1402 (S.D. N.Y.1973); *see generally*, Nimmer on Copyright, § 13.02 (1990) (proof that defendant had the opportunity to view sufficient).[14]

13. As I have already found, cut and paste versions of Kunycia's drawings were used to prepare new Kay–Bee drawings and under the supervision of Mr. Atkins Melville referred to Ku-

nycia's drawings when preparing to redraw the Kay–Bee plans.

14. I also note that in cases where the similarity between plaintiff's and defendant's works are

The test of substantial similarity in this Circuit is "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966). *Accord, Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 (2d Cir. 1977); *Past Pluto Productions Corp. v. Dana*, 627 F.Supp. 1435, 1443 (S.D.N.Y. 1986). Slight differences between a protected work and an accused work, however, will not preclude a finding of infringement. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980).

Plaintiff demonstrated at trial that defendant's Kay–Bee drawings are substantially similar to his own. Melville's Kay–Bee Masters (Trial Exhibit 18) closely resemble Kunycia's Honey Creek drawings (Trial Exhibit 4). The store design represented by the two sets of drawings is basically the same, which is not significant for copyright law purposes: what is significant is that the design elements are expressed in virtually identical ways. This similarity is readily apparent to the ordinary lay observer, although I should note that expert witnesses Segal and Dorf also testified on the identity between the two sets of drawings. Mr. Dorf stated that 95 percent of the two sets of drawings are "almost identical." Even Mr. Atkins stated that the Melville and Kunycia drawings were "very close." Particularly persuasive were the transparencies plaintiff prepared of the Melville Masters. When these acetates are placed over the corresponding portions of plaintiff's Honey Creek drawings, the similarity between the two sets of drawings is quite striking—even hand-drawn lettering, arrows and cross-hatching register precisely. While there are some differences, the overall impression is that the two sets are very similar.

Melville could, of course, have prepared its own Kay–Bee drawings based upon examinations of existing stores, landlord specifications, and shop drawings. Even if, by chance, the resulting drawings had resembled plaintiff's, there would have been no copyright infringement because the drawings were prepared independently. *See e.g. Mazer v. Stein*, 347 U.S. 201, 217–18, 74 S.Ct. 460, 470–71, 98 L.Ed. 630 (1954) (independently drawn but identical maps not infringing).

It is true that, even if an alleged copy is based on a copyrighted work, a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of plaintiff's. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir.1982). There were attempts made by Melville to minimize any resemblance between Melville's Kay–Bee format and Kunycia's. However, whatever the supervisors Tricarico and Atkins may have intended, the fact is that the format of the Melville drawings is so similar to that of Kunycia's drawings that direct copying, if not actual tracing or photocopying, can be reasonably inferred. The Kay–Bee design could have been expressed accurately without incorporating Kunycia's own details into the Melville Masters. It just so happened, however, that Kunycia had apparently done a good job on the Kay–Bee drawings. Mr. Tricarico himself remarked on this in one of his letters to the plaintiff (Trial Exhibit 10).

Although limitation may be the most sincere form of flattery, it is this direct appropriation of another's work that is prohibited by the Copyright Act. Melville has infringed Kunycia's copyright on the format of his Kay–Bee architectural drawings.

### V.

■ In addition to his claim of copyright infringement, Kunycia alleges that Melville was unjustly enriched by its unauthorized use of his Kay–Bee plans.[15] He argues

---

sufficiently "striking", proof of access is not required. *See Heim v. Universal Pictures Co.*, 154 F.2d 480 (2d Cir.1946); *Morris v. Wilson*, 189 F.Supp. 565, 567 (S.D.N.Y.1960), *aff'd*, 295 F.2d 36 (2d Cir.1961). Assuming, *arguendo*, that plaintiff has failed to prove access, the similarity is sufficiently "striking" so as to make such a showing unnecessary.

**15.** In Count 2 of his complaint, Mr. Kunycia also sets out a claim of misappropriation, but this claim was not mentioned in his pretrial

that Melville should not be permitted to retain the fees that would have been paid to him or another architect to produce Melville's Kay–Bee plans. Defendant asserts that this state law claim is preempted by federal law.

Defendant argues, *inter alia,* that section 301 of the Copyright Act of 1976 preempts a state law claim for unjust enrichment. Under this section the test for preemption is a two-part analysis: (1) does the work of authorship in which rights are claimed fall within the subject matter of copyright as defined in sections 102 and 103 of the Act, and (2) is the right created by state law equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106 of the Act. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 199–200 (2d Cir.1983), *reversed on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *Universal City Studios, Inc. v. Nintendo Co. Ltd.,* 615 F.Supp. 838, 856–57 (S.D.N.Y.1985).

Architectural plans are, in general, copyrightable as pictorial and graphic works under section 102(a)(5). Furthermore, the format of plaintiff's drawings in particular is copyrightable as an original and independently created work.

Section 106 includes the right "to reproduce the copyrighted work in copies" and "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(1), (2). Because Kunycia's claim of unjust enrichment is that Melville reproduced and used his copyrighted work to prepare derivative works without properly compensating him, the claim is preempted as a state law right equivalent to exclusive rights within the general scope of copyright. *See Harper & Row,* 723 F.2d at 200. Kunycia does not allege any misconduct incorporating elements other than those subsumed within the claim of copyright infringement. Plaintiff's state law claim of unjust enrichment is therefore preempted.

memorandum of law or as a proposed conclusion of law. I have assumed that the claim has

### VI.

Defendant has asserted the affirmative defenses of laches and the statute of limitations against plaintiff's claim.

1. *Laches*

 To establish the defense of laches, Melville must demonstrate that Kunycia did not assert his rights diligently and that that resulting delay prejudiced Melville in some way. *Lottie Joplin Thomas Trust v. Crown Publishers,* 592 F.2d 651, 655 (2d Cir.1978).

Kunycia first suspected that Melville was using his drawings without authorization in the fall of 1983, but only discovered direct evidence of the misuse itself in April 1984 when he visited defendant's offices. Soon thereafter plaintiff spoke to Mr. Tricarico at Melville and then initiated a series of letters in August 1984, (Trial Exhibits 9–15), asserting his rights to the format of his Kay–Bee drawings. While there was a break in plaintiff's written communications with Mr. Tricarico between November 1984 and March 1986, Kunycia had been promised repeatedly that he would receive copies of the Melville drawings with the new format. Plaintiff never received the promised drawings. Plaintiff's Certificate of Copyright Registration was issued on March 6, 1986 (Trial Exhibit 16). This action was filed on February 19, 1987.

Melville states that, once Kunycia's communications stopped at the end of 1984, Melville assumed that Kunycia had no objection to its redrawn Kay–Bee format [Defendant's Pretrial Memo, p. 46]. On that assumption, Melville continued to use those drawings to erect stores until early 1986. The purported prejudice seems to be that Melville incurred the risk of being charged with additional damages for infringing plaintiff's copyright during the year 1985. However, Melville does not claim that it has made any expenditures in reliance on plaintiff's alleged delay in commencing this action. Melville has been on notice since at least August 1984 that there were potential

been abandoned.

**578**

legal problems associated with its use of Kunycia's drawings (Trial Exhibit 9). Melville also does not claim that Kunycia made any misleading statements about his copyright claims or that plaintiff even intimated that a settlement had been reached.

Under these circumstances, Melville's defense of laches—based as it is on an entirely groundless assumption—must fall.

### 2. *Statute of Limitations*

The Copyright Act provides for a limitations period of three years for civil actions. 17 U.S.C. § 507(b). Under the law of this Circuit, Kunycia is entitled to recover monetary damages which accrued during the three-year period immediately preceding the filing of this action—that is, after February 19, 1984. *See Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108, 1111 (2d Cir.1977); *Gaste v. Kaiserman*, 669 F.Supp. 583, 584 (S.D.N.Y.1987).

Melville argues that by February 1984 it had completely redrawn the Kay–Bee format and that there was consequently no infringement after that date. However, I have found that Melville's supposedly "redrawn" Kay–Bee Masters (Trial Exhibit 18) infringe plaintiff's copyright. These infringing drawings were in use at least until early 1986 (Atkins Testimony, Transcript, p. 263). I find that there is no statute of limitations problem here.

### VII.

In summary, on the issue of liability presented to me I have found that defendant infringed a valid copyright held by plaintiff. Plaintiff's unjust enrichment claim is dismissed as preempted by the federal Copyright Act of 1976. Defendant's defenses of laches and statute of limitations are dismissed.

A conference will be held on August 17, 1990 at 10:30 AM at which time the future course of this action will be discussed.

SO ORDERED.