CERTIFIED ENGINEERING, INC., Plaintiff,

v.

FIRST FIDELITY BANK, N.A.,

and

Knowlton/MBNA, Inc.,

and

C & A Investments, Inc., Defendants.

Civ. A. No. 94–1419 (MLP).

United States District Court, D. New Jersey.

April 28, 1994.

---

9. Although styled as a motion for attorneys fees, plaintiffs' motion is in reality a motion for summary judgment.

**319**

Joel D. Rosen, Princeton Junction, NJ, for plaintiff.

Joshua R. Slavitt, Klehr, Harrison, Harvey, Bransburg & Ellers, Cherry Hill, NJ, for defendants First Fidelity Bank, N.A. and Knowlton/MBNA, Inc.

Donald R. Daines, Hackensack, NJ, for defendant C & A Investments, Inc.

## OPINION

PARELL, District Judge.

This matter is presented on application of plaintiff engineering firm seeking a preliminary injunction against alleged actual or threatened infringement of plaintiff's registered copyright in a certain set of engineering plans and drawings. Defendants are the successor owner and contract purchaser of the tract of land under subdivision development which is the subject of the drawings. The Court hereby issues its findings of fact and conclusions of law, as required under Fed.R.Civ.P. 52(a). For the reasons stated, the application for preliminary injunction is denied.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Certified Engineering, Inc., filed a Verified Complaint and application for temporary restraining order and preliminary injunction in this Court on March 29, 1994, alleging copyright infringement and state law claims of conversion and unjust enrichment. An Order to Show Cause was issued, without temporary restraints, and the injunctive application was argued on April 11, 1994.[1]

Defendants are First Fidelity Bank, N.A., and its wholly-owned subsidiary, Knowlton/MBNA, Inc. (hereinafter collectively referred to as "First Fidelity"), and C & A Investments, Inc. ("C & A"), a New Jersey corporation. On or about September 7, 1993, First Fidelity acquired, by foreclosure sale, a parcel of land ("the Property") which was formerly mortgaged with First Fidelity and owned by Axial Investors Group, Inc. ("Axial"). Defendant C & A has contracted to

---

1. Plaintiff's record on this application consists of the Verified Complaint ("Complaint") and exhibits A–D attached thereto. The First Fidelity defendants have filed an affidavit by John Nalesnik. Defendant C & A has filed certifications by John A. Fera and by John Carroll. All parties submitted briefs and presented oral argument. The relevant historical facts do not appear to be in dispute.

purchase the Property for $350,000 pursuant to an Agreement dated January 19, 1994 (*See* Compl.Ex. C.). The closing of title is scheduled for early May 1994.

The Property consists of approximately 91 acres located in Knowlton Township, New Jersey, and is known as "Meadow Ridge." In or about 1988 plaintiff entered into a contract with Axial, which was the current owner, to provide Axial with engineering plans and related services for the purpose of obtaining preliminary and final subdivision approval for the Property. Pursuant to that contract, plaintiff prepared various plans (including maps) which culminated in a final revised set of engineering plans and drawings and accompanying specifications and notes. The various earlier versions of those plans were submitted to the several governmental authorities having jurisdiction over development of the property; and the final revised set became the basis for the following permits and approvals granted to Axial in or about 1988:

- Local Preliminary Subdivision Approval (Knowlton Township Planning Board)
- County Preliminary Subdivision Approval (Warren County Planning Board)
- U.S. Army Corps of Engineers Approval of Wetland Delineation
- U.S. Army Corps of Engineers Nationwide Permit
- Warren County Soil Conservation Soil Disturbance Permit

The approval processes before those agencies consisted of the filing of the earlier versions of the plans for public review and comment; public hearings in some cases; revisions made to those plans in response to laws, ordinances, regulations and comments received from the agencies; and eventual approval of the final revised set by each agency. The various versions of those plans were at all times during those proceedings available for inspection and copying by the general public. The final revised set of the plans (hereinafter referred to as the "Approved Plans") have remained on file with those agencies for public inspection and copying. The approvals and permits which Axial obtained for development of the Property all incorporated the Approved Plans and required the owners to develop the property in strict accordance with the Approved Plans.

The Approved Plans depict two types of data: (1) private property data showing the layout and configuration of the individual subdivided lots, and (2) public improvements to be made and thereafter dedicated to the public, such as roads, curbs, utilities and storm water detention system. During the years subsequent to 1988, Axial and others, acting through contractors, installed and completed most of the public improvements shown in the Approved Plans. For example, all of the curbing of the future public road has been installed, culverts have been installed, and the road has been graded to the approved specifications. Completion of the public improvements as shown, or posting a performance bond for that work, is one of the conditions for obtaining final subdivision approval.

Plaintiff never received final payment from Axial for its services in connection with preparing the Meadow Ridge subdivision plans. Axial instead encountered financial difficulties, and in 1991 Axial declared bankruptcy and was discharged from its debts, including the unsecured debt which it owed to plaintiff. Thereafter, First Fidelity foreclosed upon the Property and acquired it at the public foreclosure sale on September 7, 1993. As previously noted, C & A contracted with First Fidelity to purchase the Property by Agreement dated January 19, 1994. That sale has not yet closed, although individual lots in the subdivision are currently being marketed by C & A for prospective sale.

Defendants state, and plaintiff does not deny, that plaintiff did not assert or claim proprietary rights or copyright protection with respect to the Approved Plans, or any of the earlier versions, until on or about March 1, 1994, when counsel for plaintiff corresponded with counsel for defendants advising that plaintiff was in the process of applying for copyright registration. (*See* Compl.Ex. D.) Plaintiff was issued a certificate of registration by the United States Copyright Office on March 2, 1994. (*See* Compl.Ex. B.) The drawings and plans which it covers are the

Approved Plans for the Meadow Ridge subdivision. (*See* Compl.Ex. A.)

The Complaint and application for preliminary injunction seek to prevent defendants from transferring between themselves or to any third parties any copies of the Approved Plans. Defendants have stated in the record that they do not have in their possession or control any copies of the Approved Plans. (*See* Certification of John Carroll ¶ 8; Affidavit of John Nalesnik ¶ 2.) However, the Complaint and injunctive prayer also seek to prevent defendants from utilizing the Approved Plans, or copies or derivatives thereof, in any manner without the permission of plaintiff. This demand does raise a controversy with defendants, because in order for defendants to complete the public improvements, continue with the subdivision development, and ultimately apply for final permits and approvals such as final subdivision approval, defendants must be able to rely upon, use and copy the copies of the Approved Plans which are contained in the public files granting the existing approvals.

In addition to plaintiff's demand that defendants desist from the alleged copyright infringement, plaintiff has offered in the alternative to grant defendants a license to use the Approved Plans. The price plaintiff seeks for this license would be the amount formerly owed by Axial, plus interest, in an accrued amount of $162,117.40 as of February 15, 1994, plus further accrued interest to date of payment. (*See* Compl. ¶¶ 13 and 24; Compl.Ex. D.) Defendants have rejected that demand, and have challenged the validity of plaintiff's registered copyright.[2]

## DISCUSSION

### I. *Jurisdiction*

Plaintiff here obtained a certificate of registration issued by the Copyright Office in accordance with title 17 of the United States Code. Plaintiff seeks a preliminary injunction based on infringement of this registered copyright and based on violation of state law. This court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a)[3] and 17 U.S.C. § 502.[4]

### II. *Application for a Preliminary Injunction*

In determining whether to grant or deny preliminary injunctive relief, the court considers the following:

(1) whether the movant will likely succeed on the merits of the litigation,

(2) whether the movant will be irreparably injured if relief is not granted,

(3) the possibility of harm to other interested persons if the injunction is granted or denied, and

(4) the public interest.

*Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 191–92 (3d Cir.1990); *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197–98 (3d Cir.1990).

### A. *Likelihood of Success on the Merits*

Plaintiff seeks a preliminary injunction preventing defendants from using or transferring between themselves or to any third parties any copies or derivatives of the Ap-

---

2. Additional pertinent facts are that Wetland Regulations have become effective since the 1988 permits and approvals were granted, with the effect that if the current 1988 approvals and permits cannot be acted upon, the feasibility of any development of the Property will be questionable. See Carroll certification ¶ 4. Further, at oral argument the Court was informed by counsel for plaintiff that if defendants are able to proceed under the existing approvals, when they or their successors apply for final subdivision approval they will be required under New Jersey laws and regulations to use the same engineering firm, i.e., plaintiff, to prepare the plans and drawings in support of that final application. Thus, although this latter point is not a finding or conclusion of the Court, it appears that, if true, this circumstance will cause the parties to have

to work-together in the future, presumably for a fee payable to plaintiff for its future services.

3. 28 U.S.C. § 1338(a) provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyrights.... Such jurisdiction shall be exclusive of the courts of the states in ... copyright cases."

4. 17 U.S.C. § 502 provides that "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."

proved Plans. The basis for seeking the injunction is that plaintiff has a valid and enforceable copyright in the Approved Plans upon which defendants are actually infringing or threatening to infringe.

■ In order to obtain the preliminary injunction sought here, plaintiff must demonstrate that it is likely to succeed on its claim of copyright infringement. To succeed on a claim of copyright infringement, a plaintiff must demonstrate (1) that plaintiff owns a valid copyright, and (2) that defendant is infringing upon that copyright. *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 667 (3d Cir.1990). Thus, "[b]efore asking a court to consider the question of infringement, a party must demonstrate the existence and the validity of its copyright." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980).

Plaintiff asserts that the copyright certificate of registration obtained by plaintiff on March 2, 1994 constitutes prima facie evidence of copyright validity, ownership and originality of the work. On this point, 17 U.S.C. § 410(c) provides:

> In any judicial proceedings the certificate of a registration made before or within five years after publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

■ Thus, the certificate of registration obtained by plaintiff gives rise to a presumption that a valid copyright exists. *See Midway Mfg. Co. v. Bandai–America, Inc.*, 546 F.Supp. 125, 138 (D.N.J.1982). However, that presumption of validity is not irrebuttable and "[w]here other evidence in the record casts doubt on the question, validity will not be assumed." *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d at 908; *see Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d at 667.[5] "The presumption flowing from § 410(c) . . . merely shifts to the defendant

the burden to prove the invalidity of the plaintiff's copyrights. The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright." *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d at 668.

Defendants, in seeking to rebut the presumption of validity, argue that, pursuant to 17 U.S.C. § 102(b), the Approved Plans are not an original work of authorship for which plaintiff may obtain copyright protection because the Approved Plans are ideas or expressions of ideas to which copyright protection does not extend.

Title 17 U.S.C. § 102 provides:

> (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
>
> .     .     .     .     .
>
> (5) pictorial, graphic, and sculptural works;
>
> . . . .
>
> (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

Defendants argue that the idea for or the design of the subdivision plans for Meadow Ridge could only be expressed in a limited number of ways and that, therefore, under the doctrine of merger, the expression of that idea or design in the Approved Plans is not subject to copyright protection. Plaintiff argues in response that the format of the subdivision plans could have been set out in many different ways, and that it is the unique format of the Approved Plans which

5. Defendants do not argue that plaintiff is not entitled to the presumption contained in 17 U.S.C. § 410(c) on the basis that plaintiff failed to file the certificate before or within five years of publication, but rather defendants seek to rebut the presumption of validity afforded plaintiff by § 410(c).

entitles plaintiff to copyright protection. For the purpose of deciding this application for a preliminary injunction, the Court assumes that the format of the Approved Plans is an original work of authorship subject to copyright protection and that the doctrine of merger does not apply here.[6]  *See Educational Testing Services v. Katzman,* 793 F.2d 533, 539–40 (3d Cir.1986); *Kunycia v. Melville Realty Co., Inc.,* 755 F.Supp. 566, 570–71 (S.D.N.Y.1990).

Defendants also argue, in seeking to rebut the presumption that a valid copyright exists here, that the Approved Plans cannot be the subject of copyright protection because, prior to plaintiff obtaining the certificate of registration, the Approved Plans were subject to general publication. Plaintiff claims, in response to this argument, that the Approved Plans were only subject to limited publication.

■ Where a general publication occurs, any common law copyright protection is lost. If, at the point that a general publication occurs, the party has not obtained a statutory copyright to protect its work,[7] then the work can be copied, distributed or sold by anyone. "A general publication occurs when a work is made available to members of the public regardless of who they are or what they will do with it." *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.,* 944 F.2d 1446, 1451–52 (9th Cir.1991) (citing *Burke v. National Broadcasting Co., Inc.,* 598 F.2d 688 (1st Cir.), *cert. denied,* 444 U.S. 869, 100 S.Ct. 144, 62 L.Ed.2d 93 (1979)).

■ Where only a limited publication occurs, this does not trigger the loss of a common law copyright. A limited publication occurs where the work is distributed to a "definitely selected group" and where the distribution is for a limited purpose, without the right of further reproduction, distribution or sale. *Id.* at 1452 (citing *White v. Kim-*

*mell,* 193 F.2d 744, 746–47 (9th Cir.), *cert. denied,* 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357 (1952)).

■ Here, plaintiff allowed its work to enter into the public domain when the plans were submitted to the various governmental agencies and made available to the general public for inspection and copying. Plaintiff did not make any attempt to restrict the right of the general public to have access to or to copy or distribute the plans submitted to the governmental agencies. Further, it cannot be said that the plans were distributed only to a "definitely selected group" or that the distribution was without the right of further reproduction or distribution.

Plaintiff cites *Intown Enterprises, Inc. v. Barnes,* 721 F.Supp. 1263 (N.D.Ga.1989) and *Kunycia v. Melville Realty Co., Inc.,* 755 F.Supp. 566 (S.D.N.Y.1990) in support of its argument that the Approved Plans were subject only to limited publication. The similar factual basis of the holdings in those two cases is easily distinguished from the facts presented here. In both *Intown Enterprises* and *Kunycia* the plans at issue were architectural drawings. In *Intown Enterprises* the court held that "the filing of architectural plans with permitting authorities" does not constitute general publication. 721 F.Supp. at 1266. In *Kunycia* the court held that "[d]istribution of plaintiff's architectural drawings to contractors, landlords and building authorities does not constitute [general] publication." 755 F.Supp. at 574. However, the administrative process for the filing of architectural plans with permitting authorities or building authorities is vastly different from the administrative process involved in obtaining permits and approvals necessary for the development and construction of an entire subdivision.

Generally, in order to obtain a building or construction permit for the construction of a house or a store, such as the house involved

---

**6.** At the hearing conducted in this matter, plaintiff proffered the expert testimony of Ed Pagan, Jr., Esquire, in support of its argument that the format of the Approved Plans is an original work of authorship subject to copyright protection. The court declined to hear the testimony of plaintiff's expert on this point on the basis that it will assume this to be true for purposes of deciding this application for a preliminary injunction.

**7.** A creator obtains a statutory copyright when the creator obtains a certificate of registration from the Copyright Office. Here, plaintiff obtained its statutory copyright on March 2, 1994.

in *Intown Enterprises* or the store involved in *Kunycia,* an architectural plan must be filed with the appropriate authority. However, the process for issuing a permit thereon is relatively simple. It is different in kind and scope from the intricate processes involved in obtaining approvals and permits in connection with the submission of site plans for the development and construction of an entire subdivision. The latter process involves a period of time during which the public is invited to comment upon the site plans which are made publicly available for inspection and copying. Public hearings are held upon applications for permits and approvals of subdivision site plans. Clearly, the publication of the subdivision plans is much more extensive and the distribution of subdivision plans within the public domain is much more widespread than is the publication or distribution of architectural plans for a house or a store. Furthermore, the nature of an architectural plan differs from that of a subdivision plan, since the latter is strictly site-specific, whereas the former can easily be "pirated" and used as the basis of myriad copied structures, absent copyright protection. Therefore, neither the holding in *Intown Enterprises* or the holding in *Kunycia* support plaintiff's argument that the Approved Plans here were only subject to limited publication.

■ This Court concludes that a general publication of plaintiff's work occurred as early as 1988 when the early versions of the plans were submitted to the governmental agencies or at the latest when the final revised plans, the Approved Plans, were submitted. Thus, since plaintiff had not obtained the certificate of registration prior to either point of general publication, the statutory copyright is likely to be found invalid upon full adjudication on the merits. If so, any common law copyright plaintiff may have had was extinguished by this general publication. Therefore, for purposes of this preliminary injunctive proceeding only, defendant has successfully rebutted the presumption of copyright validity and plaintiff has failed to demonstrate that it is likely to succeed on the merits of its copyright claim.

## B. *Irreparable Harm*

Plaintiff initially argued that because it has established a prima facie case of copyright infringement, or rather shown a reasonable likelihood of success on the merits, there arises a presumption of irreparable injury. *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1254 (3d Cir.1983). While it is true that such a showing would give rise to a presumption of irreparable injury, defendant here has successfully rebutted the prima facie presumption afforded plaintiff under 17 U.S.C. § 410(c), and plaintiff has failed to demonstrate a reasonable likelihood of success on the merits. Therefore, a presumption of irreparable injury does not arise here.

Further, an injury which can be compensated by an ascertainable monetary amount does not constitute an irreparable injury. On this issue the Supreme Court has stated:

'The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'

*Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quoting *Virginia Petroleum Jobbers, Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C.Cir. 1958)); *see also Morton v. Beyer,* 822 F.2d 364, 371–73 (3d Cir.1987).

Here, plaintiff itself makes it clear that it can be compensated for any injury caused by the alleged infringement by a monetary payment in the amount of $162,117.40 plus accrued carrying charges. Plaintiff states in its Complaint, as well as in its brief in support of the application for the preliminary injunction, that plaintiff has demanded that defendants cease and desist from infringing upon plaintiff's copyright and, in the alternative, has demanded that defendants pay plaintiff $162,117.40 plus accrued carrying charges in exchange for which plaintiff would grant defendants a license to use the copyrighted plans. (*See* Compl. ¶ 24; Compl.Ex.

D; and Pl.'s Br. at 5.) Thus, it is clear that plaintiff here can be compensated by an ascertainable monetary amount, which plaintiff itself has quantified, and that no irreparable injury will be suffered by denying the injunctive relief.

### C. *Balance of Harm and the Public Interest*

The development of the Meadow Ridge subdivision, and the related administrative processes, have been progressing for approximately six years. The revised plans were finalized long ago, in or about 1988, and were the basis for the permits and approvals upon which development of the Meadow Ridge subdivision has since proceeded. All the permits and approvals incorporate the Approved Plans and require that the Property be developed in strict compliance with the Approved Plans.

Plaintiff here has an interest in being compensated for the engineering services which it provided to Axial in connection with the Meadow Ridge subdivision. If the injunctive relief is denied, plaintiff stands to suffer harm in the loss of compensation for its services. Defendants here have an interest in being able to complete the Meadow Ridge subdivision in accordance with the Approved Plans. Since the permits and approvals require that development be made in strict compliance with the Approved Plans, if defendants are unable to proceed in accordance with the Approved Plans, this would effectively render the permits and approvals useless. Thus, if the injunctive relief is granted, defendants and the public will lose the benefit of all the hard work, effort and resources which have gone into obtaining the permits and approvals upon which the development of the Property is conditioned. Further, if the 1988 permits and approvals are rendered useless, the feasibility of *any* development of the Property would become questionable. *See supra* note 2. Thus, on balance, the interest of the defendants and the public in the completion of the Meadow Ridge subdivision, as currently approved in accordance with the Approved Plans, outweighs the interest of plaintiff in being compensated for services rendered.

Further, a balance of the respective harms suffered by the parties here includes taking into account equitable considerations. The initial version of the plans upon which plaintiff worked was submitted to the governmental agencies in 1988. The Court notes here that at no point prior to March 2, 1994 did plaintiff ever notify any interested party or the public of any copyright interest in any of the versions of the plans. Thus, the equitable doctrine of laches suggests that because plaintiff failed to diligently assert any copyright, it should not be permitted to assert such a right at this late juncture where to do so clearly prejudices the defendants. *See Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 655 (2d Cir.1978) (where plaintiff fails to diligently assert any copyright, plaintiff is barred by doctrine of laches from asserting those rights if the delay has resulted in prejudice to defendants).

Thus, defendants, as well as the public interest, would suffer a significant hardship if a preliminary injunction were to issue, and it is clear that the balance of the respective harms weighs in favor of defendants here.

### D. *Conclusion*

Plaintiff here has failed to demonstrate that it is likely to succeed on the merits of the litigation and has also failed to demonstrate that it will be irreparably harmed if an injunction is denied. A failure by the moving party to satisfy either of these prerequisites "must necessarily result in the denial of a preliminary injunction." *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982). Further, the balance of the harms to the respective parties and considerations of the public interest weigh in favor of denying a preliminary injunction.

For the reasons stated, an Order will be entered denying plaintiff's motion for a preliminary injunction.