**AMERICAN MOVIE CLASSICS COMPANY, Plaintiff,**

v.

**TURNER ENTERTAINMENT CO., as successor in interest to RKO Pictures, Inc. and Turner Classic Movies, Inc., Defendants.**

No. 95 Civ. 4591 (AGS).

United States District Court, S.D. New York.

April 11, 1996.

Weil, Gotshal & Manges, New York City, for plaintiff (Kenneth L. Steinthal and David J. Lender, of counsel).

David Dunn, Davis, Scott, Weber & Edwards, P.C., New York City and Jack Dalton, P.C., Troutman Sanders, Atlanta, Georgia, for defendants.

## OPINION AND ORDER

SCHWARTZ, District Judge:

This case concerns a dispute over the exhibition of classic motion pictures on cable television. Plaintiff American Movie Classics Company ("AMCC"), the owner and operator of the American Movie Classics ("AMC") cable network, alleges that defendants Turner Entertainment Co. ("Turner Entertainment") and Turner Classic Movies, Inc. ("Turner Classic") violated AMCC's exclusive exhibition rights in a library of classic RKO Pictures, Inc. ("RKO") motion pictures licensed by AMCC from Turner Entertainment. AMCC claims that Turner Entertainment and Turner Classic, which operate the TNT and Turner Classic Movies ("TCM") cable networks, respectively, violated AMCC's rights by airing certain RKO films on TNT and TCM during times in which AMCC had the exclusive right to exhibit these films on cable television.

The question before the Court is the extent to which federal copyright law preempts certain state law causes of action. AMCC's Complaint presents six claims for relief for the wrongs alleged to have been committed by Turner Entertainment and Turner Classic. Four of these claims arise under state law. AMCC also asserts two claims for copyright infringement under federal law. Pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, defendants move to dismiss plaintiff's four state law claims on the grounds that these claims are preempted by Section 301 of the Copyright Act, 17 U.S.C. § 301, and, therefore, fail to state a claim upon which relief can be granted. For the reasons set forth below, defendants' motion is granted.

### FACTS [1]

AMCC's Complaint centers on its charges that Turner Entertainment and Turner Classic knowingly, intentionally, and repeatedly violated AMCC's exclusive exhibition rights in certain RKO classic films licensed by AMCC from Turner Entertainment. Complaint ¶ 1. AMCC asserts that "exclusive exhibition windows" like those in its license agreement with Turner Entertainment—which give AMCC the sole right to exhibit films on cable during specified periods of time—are crucial to the ability of a cable network to define its identity in the increasingly crowded and competitive cable market. Complaint ¶ 2.

In March 1992 Turner Entertainment, as successor to RKO, amended and extended a prior film licensing agreement with AMCC. Under the March 1992 agreement ("the Agreement"), Turner Entertainment granted AMCC exhibition rights to a library of approximately 700 RKO films for a ten-year period, and AMCC agreed to pay some $48 million in license fees for such rights. The license was granted on an exclusive basis as set forth in the Agreement. Complaint ¶ 24. AMCC acquired the exclusive right to exhibit the RKO films during specified windows. Outside of these windows, Turner Entertainment retained the right to exhibit the films covered by the Agreement. From AMCC's perspective, the exclusive exhibition windows were a cornerstone of the Agreement. Complaint ¶¶ 2–7, 25.

Turner Classic launched TCM, its own classic movies cable network in competition with AMC, in April 1994. Complaint ¶ 26, 46. AMCC alleges that Turner Entertainment and Turner Classic willfully violated AMCC's exclusive rights in certain RKO films at least 28 times during 1994 and 1995 by airing films on TNT and TCM during AMCC's exclusive exhibition windows. Complaint ¶¶ 6, 9. Asserting that AMCC has been seriously harmed by defendants' conduct, AMCC seeks compensatory damages in excess of $150 million, punitive damages of at least $100 million, and other relief necessary to fairly redress AMCC for defendants' allegedly unlawful conduct. Complaint ¶ 13.

Among its six claims for relief, AMCC asserts two claims for copyright infringement, one against Turner Entertainment and one against Turner Classic. The copyright claim against Turner Entertainment alleges that it "committed numerous infringements of the copyrighted films exclusively licensed to AMCC by granting to Turner Classic (or the TNT network) the right to exhibit, or otherwise allowing Turner Classic (or the TNT network) to exhibit, the same films on [TCM] (or TNT)." Complaint ¶ 57. The copyright claim against Turner Classic alleges that it "committed numerous infringements of the copyrighted films exclusively licensed to AMCC by exhibiting the same films on [TCM]."

AMCC also asserts four state law claims—breach of contract, tortious interference with contract, unfair competition, and unjust enrichment—which are the subject of defendants' motion to dismiss. In its First Claim for Relief, AMCC claims that Turner Entertainment breached its obligations under the Agreement "by violating AMCC's exclusive exhibition rights with respect to the films licensed thereunder." Complaint ¶ 36. The Second Claim alleges that Turner Classic tortiously interfered with the Agreement between Turner Entertainment and AMCC "by inducing Turner Entertainment to provide [Turner Classic] with movies for exhibition to which AMCC has (and had) exclusive exhibition rights." Complaint ¶ 41. In its Third Claim, AMCC alleges that Turner Entertainment and Turner Classic engaged in unfair competition by misappropriating "the exclusive property of AMCC (*i.e.*, AMCC's exclusive rights in the films at issue), and have given such misappropriated property to Tur-

---

1. All facts relevant to defendants' motion are set forth in AMCC's Complaint and must be taken as true for purposes of this motion. *See LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991).

ner Classic in order to permit Turner Classic to gain an unfair competitive advantage against AMCC." Complaint ¶ 48. AMCC alleges in its Fourth Claim that Turner Classic was unjustly enriched at AMCC's expense "by being able to exhibit classic movies covered by the agreement ... on its cable network during the same period under which AMCC had the exclusive license to exhibit such films." Complaint ¶ 52.

## DISCUSSION

When Congress revised the copyright laws in 1976, it specifically provided for preemption of all state rights equivalent to those within the scope of federal copyright law. Section 301 of the Copyright Act, 17 U.S.C. § 301,[2] contains a two-part analysis for preemption.[3] First, the work of authorship in which state law rights are claimed must fall within the "subject matter of copyright" as defined in Sections 102 and 103 of the Act. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). Second, the statute requires that a state law have created "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106" if the state law is to be preempted. *Id.*

### A. *Rights in Works Within Subject Matter of Copyright*

The first prong of the preemption analysis is satisfied here because AMCC's four state law claims assert rights in the RKO films, which come within the subject matter of federal copyright. The subject matter of copyright consists of any "original works or authorship fixed in any tangible medium of expression" and includes "motion pictures and other audiovisual works." 17 U.S.C. § 102(a); *Universal City Studios, Inc. v. T–Shirt Gallery, Inc.*, 634 F.Supp. 1468, 1475 (S.D.N.Y.1986). Indeed, AMCC has asserted in its Complaint that it has valid copyright rights in the licensed RKO films.

### B. *Equivalency to Rights Within Scope of Copyright*

The second prong of the preemption analysis requires a close review of plaintiff's four state law claims. The test is satisfied when the state law rights asserted by the plaintiff are equivalent to any of the exclusive rights within the scope of copyright law. These exclusive rights include the rights "to reproduce the copyrighted work in copies," and, in the case of motion pictures, "to perform the copyrighted work publicly." 17 U.S.C. § 106.

Section 301 preempts only those state law rights that "may be abridged by an act which, in and of itself, would infringe one of the exclusive rights" provided by federal copyright law. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992) (quoting *Harper & Row*, 723 F.2d at 200).

**2.** Section 301 states in relevant part as follows:
(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible means of expression; or
(2) any cause of action arising from undertakings commenced before January 1, 1978; [or]
(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ...
17 U.S.C. § 301.

**3.** Some courts have referred to a three-part analysis because Section 301 by its terms does not apply to causes of action arising before January 1, 1978. *See, e.g., Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1531–32 (S.D.N.Y. 1985). Because AMCC's cause of action arose in 1994, this "additional" condition of Section 301 is obviously satisfied.

But if an "extra element" is "required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption." *Computer Assocs.*, 982 F.2d at 716 (quoting 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 1.01[B][1], at 1–14–15 (1995)); *see also Harper & Row*, 723 F.2d at 200 (where state law right "is predicated upon an act incorporating elements beyond mere reproduction or the like, the [federal and state] rights are not equivalent" and there is no preemption).

Under this so-called "extra element" test, "a state law claim is not preempted if the 'extra element' changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Computer Assocs.*, 982 F.2d at 716 (quoting *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F.Supp. 1523, 1535 (S.D.N.Y.1985)). However, an action "will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature.'" *Id.* at 717 (quoting *Mayer*, 601 F.Supp. at 1535).

To determine whether a claim meets the standard for preemption, the Court must determine "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Computer Assocs.*, 982 F.2d at 716 (quoting 1 Roger M. Milgrim, *Milgrim on Trade Secrets* § 2.06A[3], at 2–150 (1992)). Accordingly, the Court will consider each of plaintiff's four state law causes of action separately.

### 1. *Breach of Contract Claim*

Although there is language in the legislative history of Section 301 and several cases stating that breach of contract claims are generally not preempted,[4] there is also persuasive authority indicating that breach of contract claims should be preempted in cer-

tain circumstances. *See, e.g., Wolff v. Institute of Electrical and Electronics Eng'rs, Inc.*, 768 F.Supp. 66, 69 (S.D.N.Y.1991); *Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F.Supp. 1201, 1205 (S.D.N.Y.1986); *Smith v. Weinstein*, 578 F.Supp. 1297, 1307 (S.D.N.Y.), *aff'd*, 738 F.2d 419 (2d Cir.1984). The teaching of these cases is that a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution, or display). However, if the breach of contract claim is based on allegations that the parties' contract creates a right not existing under copyright law—a right based upon a party's contractual promise—and the plaintiff is suing to protect that contractual right, then the claim is not preempted. *National Car Rental System, Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 431–433 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993) ("contractual restriction [creating right not existing under Copyright Act] constitutes an extra element that makes this cause of action qualitatively different from one for copyright").

Here, the basis for AMCC's breach of contract claim is that Turner Entertainment "violat[ed] AMCC's exclusive exhibition rights" with respect to the licensed RKO films. Complaint ¶ 36. There is no allegation that Turner Entertainment breached any provisions of the Agreement other than those providing AMCC with the exclusive right to exhibit the films during the windows specified in the Agreement. The Agreement's exclusivity provisions cannot provide the "extra element" necessary to avoid preemption because licensees such as AMCC are required to show that they have exclusive licenses in order to establish standing to assert copyright violations. Furthermore, the Court does not perceive a "qualitative difference" between AMCC's breach of contract claim (based on the Agreement's exclu-

---

4. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748 ("nothing in the bill derogates from the rights of parties to contract with each other and to sue for breaches of contract"); *see also Strauss v. Hearst*

*Corp.*, No. 85 Civ. 10017 (CSH), 1988 WL 18932 (S.D.N.Y. Feb. 19, 1988), at *9; *Ronald Litoff, Ltd. v. American Express Co.*, 621 F.Supp. 981, 986 (S.D.N.Y.1985).

sive exhibition right) and its copyright claim (based on the Copyright Act's exclusive right of public performance). Rather, it appears clear that the rights asserted under the contract claim are equivalent to the Copyright Act's exclusive right of public performance.[5] Accordingly, AMCC's breach of contract claim is preempted.

### 2. *Tortious Interference Claim*

■ AMCC's tortious interference with contract claim against Turner Classic fares no better than the breach of contract claim against Turner Entertainment under the Section 301 preemption analysis. In the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted. In *Harper & Row, supra*, the plaintiff publisher entered into an agreement with *Time* magazine under which *Time* was to print pre-publication excerpts of President Ford's memoirs. *Time* paid $12,500 in advance for this privilege, and was to pay an additional $12,500 when its edition containing the excerpts was complete. Before *Time*'s publication date, *The Nation* magazine obtained a manuscript and published a summary and portions of the Ford memoirs. *Time* never published excerpts of the manuscript and refused to pay Harper & Row the additional $12,500. *Harper & Row*, 723 F.2d at 198–99. On these facts, Harper & Row sued *The Nation* for tortious interference with contractual relations. The Second Circuit affirmed the dismissal of the tortious interference claim, holding that "[i]f there is a qualitative difference between the [right of exclusivity based on the contract] and the exclusive right under the [Copyright] Act . . . we are unable to discern it. In both cases, it is the act of unauthorized publication which causes the violation." *Harper & Row*, 723

F.2d at 201; *see also Kamakazi Music Corp. v. Robbins Music Corp.*, 522 F.Supp. 125 (S.D.N.Y.1981) (dismissing tortious interference claim based on same factual allegations as copyright infringement claims), *aff'd*, 684 F.2d 228 (2d Cir.1982).

■ As with the breach of contract claim, the gravamen of AMCC's tortious interference claim is an alleged violation of AMCC's exclusive right to exhibit certain films during the windows specified in the Agreement. AMCC alleges that Turner Classic interfered with the Agreement between AMCC and Turner Entertainment "by inducing Turner Entertainment to provide [Turner Classic] with movies for exhibition to which AMCC has (and had) exclusive exhibition rights." Complaint ¶ 41. As discussed above in the context of the breach of contract claim, AMCC's contractual right to exclusivity is equivalent to its exclusive right of public performance under the Copyright Act. The allegations unique to the tortious interference claim—that Turner Classic acted wrongfully and intentionally with knowledge of the Agreement—make no difference to the preemption analysis. The fact that a tortious interference claim contains

> additional elements of awareness and intentional interference, not part of the copyright infringement claim, goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated.

*Harper & Row*, 723 F.2d at 201. Accordingly, AMCC's tortious interference with contract claim against Turner Classic is preempted under Section 301 of the Copyright Act.

---

5. AMCC suggests in its brief that the nature of the relief it seeks under its contract claim (including the fact that it seeks replacement cost damages and may decide to seek rescission of the Agreement) should have a bearing on the Section 301 preemption analysis. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's First, Second, Third and Fourth Claims ("Plaintiff's Mem.") at 13–14. However, it offers no authority for the novel proposition that a "qualitative difference" be-

tween the state law claim and the copyright claim may be supplied by a difference in damages claimed for the same basic wrong. In fact, if there were such an exception to the rule of preemption, the exception would quickly swallow the rule. Whenever the applicable state law of damages differed from the Copyright Act's remedial scheme, the state claim could not be preempted. Surely, this was not Congress' intent in enacting Section 301.

### 3. Unfair Competition Claim

AMCC's Third Claim alleges that Turner Entertainment and Turner Classic misappropriated AMCC's exclusive rights to exhibit the licensed films and gave this misappropriated property to Turner Classic in order to permit it to gain an unfair competitive advantage over AMCC. Complaint ¶ 48. This claim appears to be asserted under the misappropriation branch of New York's unfair competition law, which generally "protects against a defendant's competing use of a valuable product or idea created by the plaintiff through investment of time, effort, money and expertise." *Mayer,* 601 F.Supp. at 1534 (citations omitted).

Courts in this Circuit have consistently held that claims for misappropriation of rights within the scope of copyright brought under New York unfair competition law are preempted. *See, e.g., Universal City Studios,* 634 F.Supp. at 1475 ("Since the unfair competition complained of here consists simply of misappropriation and reproduction of the style and characters of [the television show] into t-shirt form, the second condition under § 301 is satisfied and plaintiffs' New York unfair competition claim is preempted."); *Orth–O–Vision, Inc. v. Home Box Office,* 474 F.Supp. 672, 684 (S.D.N.Y.1979) (claim for misappropriation of right to exhibit films preempted); *Mayer,* 601 F.Supp. at 1535–36 (claim for misappropriation of snowflake design preempted); *Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1291 (S.D.N.Y.1988) (claim for misappropriation of rights in certain Dali drawings preempted).

The Second Circuit has noted that application of the extra element test "has led to holdings that § 301 preempts unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression.... In contrast, unfair-competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test and avoid § 301 preclusion." *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993) (citing *Computer Assocs., supra,* 982 F.2d at 717). In *Kregos,* the plaintiff claimed that the defendant's publication and distribution of a "pitching form" copied from the plaintiff's form misrepresented the authorship of the form and constituted unfair competition. The Second Circuit held, however, that the "unfair-competition and misappropriation claims, based solely on the copying of the protected expression in his forms, are preempted by § 301 ... the state unfair-competition claim is equivalent to copyright ..." *Kregos,* 3 F.3d at 666.

■ Relying on *Kregos* and other cases preempting unfair competition claims, defendants contend that AMCC's claim is preempted because the basic act which allegedly constitutes misappropriation of AMCC's rights—the exhibition of certain films by Turner Classic during AMCC's exclusive exhibition windows—is the same act which allegedly constitutes copyright infringement. The Court agrees, and AMCC appears to concede that unfair competition claims alleging "mere misappropriation" are preempted. *See* Plaintiff's Mem. at 18–19. AMCC argues, however, that its unfair competition claim is much broader than "mere misappropriation" because it includes elements of "passing off" and deception, pointing to its allegations that defendants' conduct created false impressions and confusion in the marketplace about Turner Classic's ability to exhibit the same movies that air on AMC. AMCC relies on cases distinguishing between "misappropriation-only" claims, which are preempted, and claims including elements of "passing off," which are not preempted. *See, e.g., Orth–O–Vision,* 474 F.Supp. at 684 n. 12; *Gemveto Jewelry Co. v. Jeff Cooper, Inc.,* 613 F.Supp. 1052, 1064 (S.D.N.Y.1985), *vacated on other grounds,* 800 F.2d 256 (Fed.Cir.1986); *Princess Fabrics, Inc. v. CHF, Inc.,* 922 F.2d 99 (2d Cir.1990); *Warner Bros. Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 247 (2d Cir.1983).

■ AMCC's attempt to rescue its unfair competition claim by seizing on the "passing off" cases is unavailing. AMCC's Complaint does not allege any claim based on "passing off," the essence of which is false representation of origin. *See, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1020 (9th Cir.1985), *cert. denied,*

474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). In a "passing off" case, the tortfeasor misleads customers into believing that the product he produces emanates from another source. *See Orth–O–Vision,* 474 F.Supp. at 684 n. 12. Here, the defendants are not accused of falsely representing the origin of the films they have exhibited; the movies exhibited were the original copyrighted works, properly identified to their producers. Rather, if any unfair competition claim is asserted, it is of the "reverse passing off" variety—*i.e.,* that Turner Classic took goods of another and passed them off as Turner Classic's own. *See Waldman Publishing Corp. v. Landoll, Inc.,* 848 F.Supp. 498, 505 (S.D.N.Y.), *vacated on other grounds,* 43 F.3d 775 (2d Cir.1994). A claim that a defendant has reproduced the plaintiff's work and sold it under the defendant's name—even if denominated "passing off" by the plaintiff—is preempted by the Copyright Act. *Id.* Professor Nimmer has explained the distinction between "passing off" and "reverse passing off"—and its effect on preemption analysis—as follows:

> If A claims that B is selling B's products and representing to the public that they are A's, that is passing off. If, by contrast, B is selling B's products and representing to the public that they are B's [when presumably they are A's], that is not passing off. A claim that the latter activity is actionable because B's product replicates A's, even if denominated "passing off," is in fact a disguised copyright infringement claim, and hence preempted.

1 *Nimmer on Copyright* § 1.01[B][1][e], at 1–25 n. 110, *quoted in Waldman,* 848 F.Supp. at 505.

Applying this distinction here, it is clear that AMCC has not pled a "passing off" claim. AMCC argues that defendants' conduct has created false impressions that the same movies shown on AMC could be seen concurrently on defendants' networks. This does not constitute "passing off," which would require a showing that customers were mislead into believing that the movies came from another source. AMCC's claim is far more akin to "reverse passing off," because Turner Classic is essentially accused of ex-

hibiting films which AMCC had exclusive rights to exhibit. This "reverse passing off" claim is equivalent to a claim for copyright infringement. *See Waldman,* 848 F.Supp. at 505. Accordingly, the Court holds that AMCC's unfair competition claim is preempted by the Copyright Act.

### 4. *Unjust Enrichment Claim*

■ In its Fourth Claim, AMCC alleges that Turner Classic was unjustly enriched by its exhibition of the licensed RKO films during AMCC's exclusive windows for such films. Complaint ¶ 52. Courts have frequently preempted similar unjust enrichment claims that derive from the reproduction, use, or misappropriation of material covered by copyright protection. *See, e.g., Kakizaki v. Riedel,* 811 F.Supp. 129, 132 (S.D.N.Y. 1992) (dismissing claim that defendant was unjustly enriched by use of plaintiff's photograph without authorization); *Kunycia v. Melville Realty Co.,* 755 F.Supp. 566, 577 (S.D.N.Y.1990) (dismissing claim that defendant was unjustly enriched by reproduction and use of plaintiff's copyrighted work to prepare derivative work). On the other hand, several decisions indicate that unjust enrichment claims may survive a preemption challenge "[t]o the extent plaintiffs can show that defendants have been unjustly enriched by material beyond copyright protection." *Selmon v. Hasbro Bradley, Inc.,* 669 F.Supp. 1267, 1273 (S.D.N.Y.1987) (citing *Harper & Row,* 723 F.2d at 200); *see also Kunycia,* 755 F.Supp. at 577 (noting that plaintiff "does not allege any misconduct incorporating elements other than those subsumed within the claim of copyright infringement").

In this case, preemption is appropriate because AMCC's unjust enrichment claim does not allege that defendants were enriched from anything other than their unauthorized exhibition of the copyrighted films—a claim which is equivalent to the exclusive right of public performance provided by the Copyright Act. Thus, the claim does not possess the "extra element" required to avoid preemption.

Attempting to save its unjust enrichment claim from preemption, AMCC relies on the Eighth Circuit's opinion in *National Car Rental System, Inc. v. Computer Assocs.*

*Int'l, Inc.*, 991 F.2d 426 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993). In that case, Computer Associates International, Inc. ("CA") asserted counterclaims including breach of contract, copyright, and unjust enrichment against National Car Rental System, Inc. ("National") claiming that National had used copyrighted computer programs in violation of a license agreement. The Eighth Circuit rejected National's contention that CA's unjust enrichment claim was preempted under Section 301, holding as follows:

> National is correct in noting that certain courts have held claims for unjust enrichment preempted when based upon allegations that the defendant engaged in one of the acts reserved to the copyright holder under § 106. We do not read CA to allege that National was unjustly enriched as a result of a wrongful exercise of one of the § 106 rights. Rather, we read this allegation of damage as a further explanation of the damages CA intends to prove arising from the breach of contract.... [W]e read [CA's] allegation of unjust enrichment as an attempt, albeit inartful, to allege that National received from [third parties] amounts that CA would have received had National not breached their contract.

991 F.2d at 434–35. AMCC contends that "the gist of AMCC's [unjust enrichment claim] is that Turner Classic was unjustly enriched by its unfair competition and tortious interference with AMCC's contract with Turner Entertainment." Plaintiff's Mem. at 23–24. Citing *National Car Rental,* AMCC argues that its unjust enrichment claim "constitutes part of the damages it intends to prove in connection with its unfair competition and tortious interference claims against Turner Classic." *Id.* at 24. If this is so, then AMCC's unjust enrichment claim must rise and fall with its unfair competition and tortious interference claims. Because the Court has concluded that AMCC's unfair competition and tortious interference claims are preempted by the Copyright Act, the unjust enrichment claim must also be dismissed. .

## CONCLUSION

For the reasons set forth above, AMCC's First, Second, Third, and Fourth Claims for Relief—breach of contract, tortious interference with contract, unfair competition, and unjust enrichment—are preempted by Section 301 of the Copyright Act. Accordingly, defendants' motion is granted and these claims are dismissed. This action shall proceed solely on the copyright infringement claims set forth in the Complaint's Fifth and Sixth Claims for Relief.

SO ORDERED.