Guillermo **ALVAREZ GUEDES,**
et al., **Plaintiffs**

v.

Hector Luis **MARCANO MARTINEZ,**
et al., **Defendants**

No. CIV. 00–1160(JP).

United States District Court,
D. Puerto Rico.

Feb. 12, 2001.

---

Jorge A. Pierluisi, Jr., Pierluisi Law Offices, PSC, Hato Rey, PR, Santiago Cordero–Osorio, Cordero Law Offices, PSC, San Juan, PR, for Plaintiff.

José A. Pagán Nieves, San Juan, PR, Darío Rivera Carrasquillo, San Juan, PR, Pinto, Lugo & Rivera, Roberto Sueiro Del Valle, San Juan, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Co-defendants Bestov Broadcasting, Inc. ("Bestov") and American International Insurance Company of Puerto Rico's ("AIICO") Motion for Summary Judgment (docket No. 72), joined by Co-defendants Héctor Luis Marcano Martínez, MTVE Inc., Marcano Teleproducciones, Inc., and Entertainment Plus, Inc. (docket No. 88); Plaintiffs Guillermo Alvarez Guedes and G.A.G. Enterprises, Inc.'s Opposition thereto (docket No. 75); Plaintiffs' Motion for Summary Judgment (docket No. 73); and Bestov and AIICO's Opposition thereto (docket No. 79).

Plaintiffs filed their original Complaint on February 4, 2000, alleging copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101—1101; unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and under Puerto Rico law, P.R. Laws Ann. tit. 10, § 259(a);

for unjust enrichment; and for violations of Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. The Complaint alleges that Defendants unlawfully broadcast the copyrighted recordings of Cuban comedian Guillermo Alvarez Guedes ("Alvarez Guedes") during the morning radio show "Hoy por hoy" hosted by Co-defendant Héctor Luis Marcano Martínez ("Marcano") and transmitted on W.I.A.C. 102.5 F.M., "Sistema 102," and that such broadcast constituted a violation of Plaintiffs' right of distribution under the copyright laws. Upon filing the initial Complaint, Plaintiffs also sought, and this Court granted, an ex parte Temporary Restraining Order restraining Defendants (1) from copying, reproducing, or using Alvarez Guedes' copyrighted works, including any of his works set forth in the Complaint; (2) from assisting, aiding, or abetting any other person or entity in the copying, reproduction, or use of any of Plaintiffs's copyrighted works; and (3) from secreting, altering, modifying, removing, or destroying all masters and/or tapes of the "Hoy por hoy" morning radio program since its inceptions on W.I.A.C. 102.5 F.M. At a hearing held on February 17, 2000, the parties agreed to the entry of a permanent injunction to that effect. On June 26, 2000, Plaintiffs amended the Complaint to add as Co-defendants Entertainment Plus and AIICO.

Defendants move the Court for the entry of summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, asserting that Plaintiffs' copyright infringement claim is subject to dismissal because the mere transmission of a sound recording to the public on the airwaves does not constitute copyright infringement; that Plaintiffs' Lanham Act cause of action should be dismissed because the pleadings fail to state a claim for unfair competition; and that Plaintiffs' claims under Puerto Rico law are preempted by the Copyright Act. Plaintiffs also move for summary judgment, alleging that it is undisputed that Defendants infringed Plaintiffs' copyright by broadcasting their copyrighted materials, that Defendants unfairly competed with Plaintiffs in violation of the Lanham Act, and that Defendants have been unjustly enriched by their actions.

## II. STATEMENT OF UNCONTESTED FACTS

1. Co-defendant Héctor Luis Marcano Martínez ("Marcano") is a radio and television personality who produces the live morning radio show, "Hoy por hoy."

2. Co-defendant MTVE, Inc. is a corporation duly organized and existing pursuant to the laws of Puerto Rico.

3. Co-defendant Bestov Broadcasting, Inc. ("Bestov") is a corporation duly organized under the laws of Puerto Rico, and the owner of W.I.A.C. 102.5 F.M., "Sistema 102."

4. Co-defendant Entertainment Plus, Inc. is a corporation duly organized under the laws of Puerto Rico and the producer of the "Hoy por hoy" radio show.

5. The "Hoy por hoy" radio show is broadcast from Monday through Friday from 6:00 a.m. to 10:00 a.m. on the radio station "Sistema 102," 102.5 F.M.

6. "Hoy por hoy" is broadcast from Radio W.I.A.C.'s facilities.

7. Since 1973, Plaintiff Guillermo Alvarez Guedes ("Alvarez Guedes") has recorded twenty-nine volumes of stories and jokes.

8. Since 1997, Alvarez Guedes has registered the copyrights for each of the twenty-nine volumes of recordings, as evidenced by the following certificates of copyright registration issued by the Register of Copyrights: TX–4–730–145; TX 4–730–141; TX–4–730–140; TX–4–730–136; TX–4–730–135; TX–4–730–134; TX–4–730–142; TX–4–730–133; TX–4–730–137; TX–4–730–138; TX–4–702–729; TX–4–730–124; TX–4–730–125; TX–4–730–126; TX–

4–730–139; TX–4–730–150; TX–4–730–151; TX–4–730–131; TX–4–730–143; TX–4–730–149; TX–4–730–130; TX–4–730–147; TX–4–730–123; TX–4–730–148; TX–4–730–129; TX–4–730–132; TX–4–730–144; TX–4–730–122; TX–4–958–016.

9. The copyright certificates enumerated in paragraph 8 herein were issued to Guillermo Alvarez Guedes. No copyright certificates were issued to G.A.G. Enterprises.

10. Some of the jokes and stories recited by Alvarez Guedes in his twenty-nine volumes of audio recordings are of his own creation; others are jokes and stories he has heard and adapted for his performances.

11. Alvarez Guedes does not hold copyright certificates for each joke or story contained in the twenty-nine audio recordings.

12. Alvarez Guedes does not possess a trademark for his voice or personae.

13. Marcano has recognized Alvarez Guedes the best or one of the best humorists in the Hispanic world.

14. The idea to use the jokes and/or stories of Alvarez Guedes in the "Hoy por hoy" radio show originated with Marcano. Marcano used Alvarez Guedes' work as an "attention getter" for the program.

15. Marcano discarded the idea of incorporating in the "Hoy por hoy" program a recording of the jokes of another Cuban humorist, Bobby Leonard, because he believed that Alvarez Guedes had greater name recognition.

16. Co-defendant Marcano played the copyrighted jokes and stories of Alvarez Guedes during every "Hoy por hoy" radio program from November 1, 1999 to February 8, 2000.

17. Marcano played the jokes and stories of Alvarez Guedes directly from the compact discs of these recordings.

18. There was no alteration and/or modification of Alvarez Guedes' recorded jokes and stories when the same were transmitted during the "Hoy por hoy" radio program.

19. Marcom Group, which produces the "Hoy por hoy" show, tapes only the "Huicho and Toño" and the "Charlie Too Much" segments of the show, because they are repeated at 9:00 a.m. These taped segments are retained for approximately eighteen (18) hours.

20. Bestov and Marcano have a contractual relationship, whereby Bestov pays Marcano for producing the "Hoy por hoy" radio show. Bestov pays for the advertising during the show.

21. "Hoy por hoy" is the only radio show that Marcano produces for Bestov.

22. Bestov owns three blanket licenses—BMI, SCSAC, and ASCAP—which permit it to play and transmit on its radio station compact discs containing music.

23. Alvarez Guedes' works were broadcast on the "Hoy por hoy" radio program without Plaintiffs' consent and without the issuance of a license directly by Plaintiffs.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodríguez v. Puerto Rico Tel. Co.,*

110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). It allows courts and litigants to avoid going to trial in cases where the plaintiff cannot prevail, thus conserving the parties' time and money and saving scarce judicial resources. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

To defeat a motion for summary judgment, "the nonmoving party must demonstrate the existence of a trial-worthy issue as to some material fact." *Cortés Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Mack v. Great Atl. and Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is trial-worthy if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). The non-movant may not rest upon mere allegations or denials of the pleadings. *See* Fed. R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts.") It is with this standard in mind that the Court proceeds to assess the motion before it.

## IV. DISCUSSION

### A. Copyright Claim

A copyright holder has the exclusive rights of reproduction, preparation of derivative works, distribution, performance and display. *See* 17 U.S.C. § 106. Any act that is inconsistent with a copyright holder's exclusive rights constitutes infringement. *See* 17 U.S.C. § 501(a); *see also United States v. Wise*, 550 F.2d 1180, 1186 (9th Cir.), *cert. denied*, 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290 (1977). As Defendants point out, section 114 of the Copyright Act of 1976 circumscribes the rights held with respect to copyrights in sound recordings.[1] *See* 17 U.S.C § 114; *Agee v. Paramount Commns., Inc.*, 59 F.3d 317, 321 (2d Cir.1995). For example, a copyright in a sound recording does not confer upon the holder a right to performance. *See* 17 U.S.C. § 114(a). The transmission of a copyrighted work to the public by means of a radio broadcast constitutes a "performance." *See id.*, § 101; *see also U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F.Supp. 1220, 1225 (N.D.Ga. 1991); *Hickory Grove Music v. Andrews*, 749 F.Supp. 1031, 1037 (D.Mont.1990).

In cases involving a copyrighted composition, however, the holder of the copyright does possess the exclusive right to performance. To establish a cause of action for the copyright infringement of a composition, the plaintiff must prove the following elements:

(1) the originality and authorship of the compositions involved;

(2) compliance with all formalities required to secure a copyright under Title 17, United States Code;

(3) that Plaintiffs are the proprietors of the copyrights of the compositions involved in this action;

(4) that the compositions were performed publicly by the defendants; and

(5) that the defendants had not received permission from any of the plaintiffs or

---

**1.** The Act defines sound recordings as "works that result from the fixation of a series of musical, spoken, or other sounds, but not including sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied." 17 U.S.C. § 101 (West Supp.1995).

their representative for such performance.

*U.S. Songs,* 771 F.Supp. at 1224 (internal brackets omitted); *see also Fermata Int'l Melodies v. Champions Golf Club,* 712 F.Supp. 1257, 1259 (S.D.Tex.1989). Here, however, Plaintiffs do not allege that Alvarez Guedes holds a copyright in a composition. Rather, Plaintiffs allege that the copyright infringement arises from Defendants' "unlawful broadcast, and dissemination of Plaintiff's copyrighted *recordings* ...." (Compl.¶ 19) (emphasis added). It is uncontested that Alvarez Guedes authored only some of the jokes and stories contained in his twenty-nine recorded volumes; others were merely adaptations of jokes or stories he had heard. Further, it is uncontested that Alvarez Guedes does not hold a copyright in each of the stories and jokes contained on the twenty-nine volumes of recordings for which he holds a copyright. Thus, the Court concludes that there is no genuine issue of material fact concerning the rights held by Alvarez Guedes in the works at issue—Alvarez Guedes holds a copyright in the sound recordings themselves, not in the compositions underlying the recordings.

Plaintiffs contend that Defendants infringed their exclusive right to distribute their sound recordings when Defendants transmitted the Alvarez Guedes jokes and/or stories contained on various compact discs via the radio station to the public. *See* 17 U.S.C. § 106(3). Framed in this way, the theory merely takes Plaintiffs down the same dead end road as if they had claimed infringement of the right to performance. As observed by the Second Circuit in *Agee,* a case that both parties rely upon in support of their respective motions for summary judgment, "[i]t is clear that merely transmitting a sound recording to the public on the airwaves does not constitute a 'distribution'; otherwise, sound recording copyright owners would have the performance rights expressly denied to them under the statute." 59 F.3d at 325. Rather, a distribution "is

generally thought to require transmission of a 'material object' in which the sound recording is fixed: a work that is of 'more than transitory duration.'" *Id.* (quoting 17 U.S.C. § 101).

Although Plaintiffs purport to rely on *Agee* for the proposition that placing a copyrighted recording on the airwaves without a license constitutes a copyright violation, this characterization is simply wrong. Although the Second Circuit did find a copyright infringement in *Agee,* the nature of the infringement related to the unlawful reproduction of a copyrighted sound recording, not its unlawful distribution. *See id.* at 323–26; *see also* 17 U.S.C. § 106(1). In *Agee,* the Court held that the defendant had violated the copyright laws when it incorporated the plaintiff's copyrighted sound recording into the sound track of a taped commercial television production, to synchronize the sound recording with the visual images. *See Agee,* 59 F.3d at 323–24. Although the Court observed that the defendant could have synchronized the sound recording with the visual images as part of a live performance without making a single copy or reproduction of the copyrighted recording, and thus without committing an infringement, the fact that the defendant duplicated the sound recording not only to make the synchronization, but also to incorporate a portion of the synchronization into a promotion of the next day's program and to prepare a commercial containing a portion of the program along with the copyrighted recording, led the Court to find a copyright infringement of the plaintiff's exclusive right to the reproduction of the sound recording. *See id.* at 322–23 & n. 2, 324. Thus, the pivotal offense committed by the defendant in *Agee* was the unlawful copying of the sound recording, not the unlawful transmission of it over the airwaves.

Unlike *Agee,* in the instant case Plaintiffs have come forward with no competent evidence to create a genuine issue of fact as to whether Defendants recorded those segments of the "Hoy por hoy" morning

radio show where Alvarez Guedes' recordings were played. To the contrary, it is uncontested that Marcano played the jokes of Alvarez Guedes directly from the compact discs, and that Marcom Group, which produces the "Hoy por hoy" show, only records the "Huicho and Toño" and "Charlie Too Much" segments of the show because they are repeated after the show ends, at 9:00 a.m. Accordingly, Plaintiffs cannot maintain their cause of action for the unlawful distribution of copyrighted sound recordings.

### B. Lanham Act Claim

■■■ Plaintiffs also allege that Defendants engaged in unfair competition when it played the recordings of Alvarez Guedes on the "Hoy por hoy" morning show, in contravention of the Lanham Act and a parallel Puerto Rico law proscribing unfair competition, P.R. Laws Ann. tit. 10, § 259(a).[2] Although Plaintiffs also argue that Defendants' actions violated Plaintiffs' right to publicity, and attempt to characterize that cause of action as arising under the Lanham Act, the right of publicity flows from the right to privacy, which is a creature of state law. *See Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 564, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) (action for the tort of appropriation of a right of publicity under Ohio law); *Groucho Marx Productions, Inc. v. Day & Night Co., Inc.*, 689 F.2d 317 (2d Cir.1982) (New York & Tennessee law); *Lahr v. Adell Chemical Co.*, 300 F.2d 256, 258 (1st Cir.1962) (New York law); *Bi–Rite Enterprises, Inc. v. Button Master*, 555 F.Supp.

1188, 1196–97 (S.D.N.Y.1983) (New York, California, Georgia, and Illinois law); *Lugosi v. Universal Pictures*, 25 Cal.3d 813, 160 Cal.Rptr. 323, 603 P.2d 425 (1979) (California law). Plaintiffs, however, have not cited a single case which purports to establish a cause of action for a violation of the right to publicity under Puerto Rico law. Rather, Plaintiffs attempt to rest their claim on *Zacchini, Bi–Rite Enterprises* and other cases[3] which expressly recognize the concept as a state law tort, and which discuss at length the contours of that tort as developed by the courts of a particular state.

A litigant has an "affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim." *McCoy v. Massachusetts Inst. of Tech.*, 950 F.2d 13, 23 (1st Cir.1991). Thus, a plaintiff must present "legal authority directly supporting [its] thesis" because "a plaintiff cannot expect a trial court to do its homework for him." *Id.* at 22. As Plaintiffs' claim for violation of the right to publicity is argued exclusively within the statutory paradigm of the Lanham Act, and no legal authority is cited to support a cause of action for violation of the right to publicity under the law of Puerto Rico, the Court will only address Plaintiffs' claim under the Lanham Act. *See DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001); *McCoy*, 950 F.2d at 22–23.

■■ To state a claim for damages under the Lanham Act, Plaintiffs must allege "a false representation of the source of [the]

**2.** This statutory provision reads: "Unfair methods of competition, and unfair or deceptive acts or practices in trade or commerce are hereby declared unlawful."

**3.** For example, Plaintiffs rely on *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir.1988). That case, however, involved the tort of appropriation of identity under California law. The Court expressly noted that Midler was not seeking to recover damages for the defendant's use of her copyrighted song, because recovery on such a theory would be preempted by the federal copyright laws. *See id.* at

462. As to the facts of that case, the plaintiff, the well-known singer Bette Midler, sued the defendant for using a deliberate imitation of the plaintiff's distinctive voice in an advertising campaign. The Court found that Midler had made a showing sufficient to defeat summary judgment on the theory that when a distinctive voice of a well-known professional singer is deliberately imitated in order to sell a product, the sellers have appropriated her identity, and thus committed a tort under California law. *See id.* at 463.

sound recording and actual confusion by consumers as to the source." *Agee,* 59 F.3d at 327 (citing *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 271 (2d Cir.1987)). The general policy underlying the law against unfair competition is the protection of consumers "from confusion as to the source of goods in the market." *Bi–Rite Enterprises,* 555 F.Supp. at 1193; *see also Warner Bros., Inc. v. American Broadcasting Companies,* 530 F.Supp. 1187, 1197 (S.D.N.Y. 1982). Plaintiffs must establish that Defendants "deliberately engaged in a deceptive commercial practice" designed to deceive the public as to the source of the product. *See Resource Developers, Inc. v. Statue of Liberty–Ellis Island Foundation, Inc.,* 926 F.2d 134, 140 (2d Cir.1991).

Here, however, Plaintiffs have not come forward with evidence tending to show that Defendants deliberately misrepresented the source of the recording or that the public was actually confused. In fact, Plaintiffs do not dispute that Marcano chose to use the Alvarez Guedes recordings on the "Hoy por hoy" show as an "attention getter" and that Marcano discarded the idea of incorporating in the program a joke recording of another Cuban humorist, Bobby Leonard, because he believed that Alvarez Guedes had greater name recognition. These facts tend to show that Defendants were not deliberately obscuring the source of the product. Although Plaintiffs do argue in their Motion for Summary Judgment that Defendants' conduct was likely to confuse the public by causing the public to believe the "Hoy por hoy" program had been sponsored or approved by Plaintiffs, Plaintiffs have failed to come forward with a single piece of evidence to support this contention. Mere argumentation that Defendants' conduct was likely to confuse the public is insufficient to survive summary judgment particularly where, as here, Plaintiffs must establish deliberate conduct

and actual confusion. Having failed to establish a genuine issue of material fact as to whether Defendants deliberately attempted to deceive the public as to the source of Alvarez Guedes' recordings of jokes and stories, and as to whether the public was actually confused, Plaintiffs' unfair competition claim does not survive summary judgment.

### C. Unjust Enrichment Claim

▮ Plaintiffs bring a claim for unjust enrichment under Puerto Rico law.[4] Plaintiffs claim that Defendants were unjustly enriched when they benefitted from the use of Plaintiffs' sound recordings as an attention getter for the "Hoy por hoy" show, causing Plaintiffs to lose royalties, goodwill, and an exclusive dealings contract with the Spanish Broadcasting Service ("SBS"). *See Ortiz Andújar v. E.L.A.,* 122 P.R. Dec. 817, 823 (Puerto Rico 1988).

Defendants, however, contend that Plaintiffs' claim for unjust enrichment is preempted by the Copyright Act. The Copyright Act preempts all causes of action for conduct governed by federal copyright law. *See* 17 U.S.C. § 301. To avoid preemption, "a cause of action defined by state law must incorporate elements beyond those necessary to prove copyright infringement, and must regulate conduct qualitatively different from the conduct governed by federal copyright law." *Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 659 (4th Cir.), *cert. denied,* 510 U.S. 965, 114 S.Ct. 443, 126 L.Ed.2d 377 (1993); *see also Data General v. Grumman Systems Support,* 36 F.3d 1147, 1164 (1st Cir.1994). "[I]f a state law cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not sub-

---

4. Plaintiffs also purport to assert a claim under Article 1802 of Puerto Rico Civil Code. Because Plaintiffs' alleged cause of action un-

der Article 1802 is stated only in generic and conclusory terms, the Court will limit its analysis to Plaintiffs' claim for unjust enrichment.

sumed within, a copyright infringement claim and federal law will not preempt the state action." *Data General,* 36 F.3d at 1164 (quoting *Gates Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 847 (10th Cir.1993)); (*see also Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir.1992)). As the First Circuit has observed, however, "not every 'extra element' of a state claim will establish a qualitative variance between the rights protected by federal copyright law and those protected by state law." *Data General,* 36 F.3d at 1164.

"Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted." *Netzer v. Continuity Graphic Assocs., Inc.,* 963 F.Supp. 1308, 1322 (S.D.N.Y.1997). Consistent with the general rule, this Court concludes that Plaintiffs' claim of unjust enrichment is equivalent in substance to a copyright infringement claim, because the cause of action is based on the same conduct alleged to violate the Copyright Act. *See Daboub v. Gibbons,* 42 F.3d 285, 289 (5th Cir.1995) (unjust enrichment claim relating to use of copyrighted material preempted); *Weber v. Geffen Records, Inc.,* 63 F.Supp.2d 458, 463 (S.D.N.Y.1999) (same); *American Movie Classics Co. v. Turner Entertainment Co.,* 922 F.Supp. 926, 934 (S.D.N.Y. 1996) (same). At its core, Plaintiffs' state law theory of recovery is based on the alleged wrongful transmission of Alvarez Guedes' sound recordings over the airwaves. Plaintiffs' alleged damages under its theory of unjust enrichment flow from that source. *See Del Madera Properties v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 977 (9th Cir.1987); *see also Wilson v. Mr. Tee's,* 855 F.Supp. 679, 685 (D.N.J.1994); *Kunycia v. Melville Realty Co.,* 755 F.Supp. 566, 576–77 (S.D.N.Y.1990). Thus, the Court finds that Plaintiffs have failed to distinguish the underlying factual predicate of the infringement claim from that of the state law claim for unjust enrichment.

Moreover, were this Court to recognize a cause of action under state law for the allegedly infringing conduct at issue, it would be permitting Plaintiffs to obtain rights expressly denied them by the Copyright Act; namely, the right to performance. "Congress carefully designed the statutory framework of federal copyright preemption ... to insure that the enforcement of these rights remains solely within the federal domain." *See Weber,* 63 F.Supp.2d at 462 (quoting *Computer Assocs.,* 982 F.2d at 716). The general federal policy of creating a uniform body of law for the protection and enforcement of intellectual property, as embodied in section 301 of the Copyright Act, would be undermined by permitting Plaintiffs to bring an action for unfair competition under these circumstances.

## V. CONCLUSION

In view of the foregoing, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment, and correspondingly **DENIES** Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**